IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**RITA L. S.[1]**,

        Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY[2]**,

        Defendant.

Civ. No. 1:16-cv-01981-MC

**OPINION & ORDER**

McSHANE, District Judge:

Plaintiff Rita L. S. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying disability and disability insurance benefits pursuant to Title II and supplemental security income pursuant to Title XVI of the Social Security Act. For the reasons set forth below, the decision of the Commissioner is REVERSED and REMANDED for award of benefits.

## BACKGROUND

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on December 17, 2013, and a Title XVI application for supplemental security income on November 13, 2015. Tr. 20. Plaintiff alleged disability beginning February 21, 2012.[3] *Id.* Her

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Nancy A. Berryhill's term as Acting Commissioner of the Social Security Administration ended on November 17, 2017, and a new Commissioner has not been appointed. The official title of the head of the Social Security Administration (SSA) is "Commissioner of Social Security." 42 U.S.C. § 902(a)(1). A "public officer who sues or is sued in an official capacity may be designated by official title rather than by name." Fed. R. Civ. P. 17(d). This Court therefore refers to Defendant as Commissioner of Social Security.

[3] During the hearing, Plaintiff's attorney requested an amended onset date post-dating the prior denial of Plaintiff's benefits. Tr. 63. This is addressed in the discussion section of this Opinion.

applications were denied. *Id.* Plaintiff appeared by video conference before an Administrative Law Judge ("ALJ") at a hearing held January 14, 2016. *Id.*

Plaintiff had previously applied for Title II benefits on June 10, 2011, which was denied on November 8, 2013. Tr. 20. Plaintiff did not appeal that unfavorable decision. *Id.* As Plaintiff's alleged onset date, February 21, 2012, was within the period adjudicated by the November 8, 2013, decision, the ALJ interpreted the present application to be "an implied request [to] reopen the prior final decision," which the ALJ denied. Tr. 21. The ALJ did find, however, that Plaintiff had increased pain symptoms, constituting "changed circumstances sufficient to rebut a presumption of continuing nondisability." *Id.*

On February 4, 2016, the ALJ issued a decision finding Plaintiff not disabled. Tr. 33. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 4. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the original alleged onset date of February 21, 2012. Tr. 23. The ALJ determined that Plaintiff had the following severe impairments: degenerative joint disease of the bilateral knees; degenerative joint disease of the right shoulder, status-post surgery; fibromyalgia; and mild carpal tunnel syndrome. Tr. 23. The ALJ determined that Plaintiff's severe impairments did not meet or equal a listed impairment. Tr. 24.

The ALJ determined that Plaintiff had the RFC to perform light work with the following additional restrictions: Plaintiff is limited to lifting fifteen pounds with the dominant (right) upper extremity; she is limited to frequent handling, fingering, and feeling with the dominant (right) shoulder; she requires the option to change positions at will while remaining on task; she is limited to frequent operation of foot controls; she is limited to occasional climbing of ramps and stairs, as well as occasional stooping and kneeling; she is limited to no crouching, crawling, or climbing ladders, ropes, or scaffolds; she is to have no exposure to hazards such as unprotected heights and moving mechanical parts. Tr. 24.

The ALJ determined that Plaintiff was capable of performing past relevant work as a program manager or social worker. Tr. 32. Accordingly, the ALJ determined that Plaintiff was not disabled. Tr. 33.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record.

42 U.S.C. § 405(g); *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) *de facto* reopening Plaintiff's prior unfavorable adjudication and failing to provide legally sufficient reasons for finding Plaintiff not disabled for the already-adjudicated period; (2) improperly rejecting Plaintiff's subjective symptom testimony; and (3) improperly discounting the medical opinion of Plaintiff's treating physician.

## I. *De facto* Re-opening of Prior Disability Determination

As previously noted, Plaintiff unsuccessfully applied for disability benefits in June 2011, alleging disability beginning July 17, 2010. Tr. 109. Following a hearing, an ALJ denied that earlier application on November 8, 2013. Tr. 109-120. Plaintiff contends that the ALJ in the present case conducted a *de facto* reopening of that earlier decision and then failed to adequately address the relevant evidence.

The doctrine of *res judicata* applies to administrative decisions, although it is applied less rigidly to administrative proceedings than to judicial proceedings. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988); *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995). Ordinarily, "when a claimant reapplies for disability benefits after an earlier denial, the earlier denial precludes the claimant from arguing that he was disabled during the period covered by the earlier decision." *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). As a general matter, the Commissioner's decision to not reopen a prior disability application is not subject to judicial review. *Lester*, 81 F.3d at 827. One exception to that rule is that an ALJ can *de facto* reopen a prior application by considering "on the merits" whether the claimant was disabled during an already-adjudicated period. *Lewis v. Apfel*, 236 F.3d 503, 510 (9th Cir. 2001).

Courts have declined to find *de facto* reopening based solely on the ALJ's review of evidence relevant to a prior adjudication, or on the review of medical history from the prior application period. *See Petersen v. Barnhart*, 213 F. App'x 600, 605 (9th Cir. 2006) (An ALJ's examination of medical evidence from before the claimant's onset date is not a determination "on the merits."); *Miglioretto v. Colvin*, 674 F. App'x 667, 669 (9th Cir. 2017) (finding no reopening when the ALJ "compared the claims to determine whether the [continued] presumption [of non-disability] should apply and did not consider 'on the merits' the issue of

[Miglioretto's] disability during the already-adjudicated period.") (internal quotation marks and citation omitted); *Oberg v. Astrue*, 472 F. App'x 488, 489-90 (9th Cir. 2012) ("The mere fact that that the ALJ did consider the record of the prior decision is of no import; plainly he had to do so in order to determine whether there had been a substantial change in Oberg's condition since that time.").

In this case, Plaintiff' counsel acknowledged the prior unfavorable decision during the hearing and asked to amend the onset date to November 19, 2013.[4] Tr. 63. The ALJ clearly explained the nature of his consideration of medical records relating to the period covered by the prior adjudication in the following exchange with Plaintiff's counsel:

> ALJ: I would propose because the—the Appeals Council, if this were to go up on appeal, would want to see the entire record. Some judges don't admit exhibits [from prior adjudications]. What I tend to do is I tend to admit them and assign them the weight they are due, recognizing that the weight I would give to exhibits to medical records that were already considered by a prior Administrative Law Judge in his determination, the weight I would be giving that would be basically none. But I would be at least reviewing them for historical purposes because I would have to see them to address the prior ALJ decision should I be looking at a *Chavez* situation.[5] Would you agree?
>
> ATTY: Yes. I would agree.
>
> ALJ: Okay. So I propose, then that they're at least marginally relevant for that purpose and that I admit all of the exhibits from B-1A through B-18F, including B-1F through B-7F, despite the fact that those predate the ALJ decision, right?
>
> ATTY: Correct.
>
> ALJ: I'm going to—
>
> ATTY: I would—I have no objection to that.
>
> ALJ: Okay. I'm going to admit them.

---

[4] During his questioning of Plaintiff, the ALJ pointed out that the correct amended onset date was November 9, 2013, the day after the prior unfavorable decision, rather than the November 19 date offered by Plaintiff's counsel. Tr. 76. This is strong evidence that the ALJ was aware of and accepted the amended onset date and that the inclusion of the unamended onset date in the ALJ's opinion was simply an oversight.

[5] *Chavez v. Brown*, 844 F.2d 691 (9th Cir. 1988).

> ALJ: But I do—I'm—I'm certainly going to consider what you have told me, particularly in light of the amended onset date. Now I want you to hold onto that thought on the amended onset date while we take some testimony. Just—
>
> ATTY: Okay.

Tr. 64-65.

The ALJ did refer to Plaintiff's original unamended onset date in his final opinion. *See, e.g.,* Tr. 20-21. But as the quoted section above indicates, the ALJ clearly acknowledged the amended onset date during the hearing. Tr. 64-65. Consistent with his remarks at the hearing, the ALJ also explicitly declined to reopen Plaintiff's prior adjudication and carefully explained the nature and scope of his consideration of evidence covering the period covered by the prior non-disability determination:

> The claimant alleges an onset of February 21, 2012. As this is within the period adjudicated by the decision of November 8, 2013, the claimant makes an implied request [to] reopen the prior final decision. However, I find that the claimant is not disabled at any point since the alleged onset date and accordingly decline to reopen the prior decision. Any reference to evidence considered in the prior decision is for solely the purposes of establishing the longitudinal record and to aid in assessing the claimant's disability.

Tr. 21.

When, as here, the ALJ specifically invokes *res judicata* and disclaims any reconsideration of the prior determination, courts have found that there is no *de facto* reopening of the prior decision. *See, e.g., Oberg*, 472 F. App'x at 490, n.1, n.2 (finding no *de facto* reopening when the ALJ "plainly stated" at the hearing that the presumption of non-disability would apply and specifically invoked *Chavez*); *Reed-Goss v. Astrue*, 247 F. App'x 923, 924 (9th Cir. 2007) (no *de facto* reopening when the Appeals Council "specifically disclaims any review on the merits," notwithstanding the Appeals Council's inadvertent reference to a prior hearing in correspondence). A review of the record demonstrates that the ALJ did not engage in a *de facto*

reopening of Plaintiff's prior non-disability determination. As in *Reed-Goss*, the record shows ALJ's reference to the original onset date rather than the amended onset date was clearly inadvertent and cannot overcome the ALJ's explicit refusal to reopen the prior decision. The ALJ did not, therefore, err by failing to discuss evidence covered by the earlier determination.

II.     **Subjective Symptom Testimony**

Plaintiff asserts that the ALJ erred by rejecting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, or a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the hearing, Plaintiff testified that she had numerous physical limitations and that her conditions were degenerative, but was unable to articulate any specific changes in the time since the prior determination of non-disability. Tr. 77, 79-80. Among these issues, Plaintiff testified that she has difficulty dressing, performing basic personal hygiene, and getting out of bed. Tr.

77. When asked what had changed since her previous disability hearing, Plaintiff testified that her pain was worse and that she was less able to move around or perform tasks. Tr. 79-80. Plaintiff testified that she cannot lift more than ten pounds with her right arm and that she cannot write because she loses feeling in her fingers. Tr. 82-83.

The ALJ made a negative credibility finding, which he supported with consideration of a number of factors the Commissioner concedes were not proper. The Court accepts those concessions, and confines its discussion to the two areas where the Commissioner maintains a challenge to Plaintiff's assignment of error: consideration of the objective medical evidence and unreported symptoms.

### A. Objective Medical Evidence

It is proper for the ALJ to consider the objective medical evidence in making a credibility determination. 20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2). An ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The Ninth Circuit has upheld negative credibility findings, however, when the claimant's statements at the hearing "do not comport with objective evidence in her medical record." *Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009).

In this case, the ALJ noted that the clinical evidence in Plaintiff's record "is not consistent with [Plaintiff's] subjective allegations." Tr. 27. The ALJ also observed that Plaintiff's medical records were "notable for the rareness of actual clinical signs and findings, and it instead consists for the most part of her subjective complaints." *Id.* At a March 2014 examination, Plaintiff complained of back and knee pain and the physical examination noted Plaintiff's antalgic gait. Tr. 459-61. An examination in January 2015 found Plaintiff

"neurovascularly intact to her bilateral lower extremitites." Tr. 487. The medical record also shows that Plaintiff suffered from mild weakness in her extremities, although the treatment notes show pain, gait disturbance, and reduced range of motion. *See, e.g.,* Tr. 465-66 (July 2014 treatment notes). However, Plaintiff's treating physician diagnosed Plaintiff with fibromyalgia, Tr. 466 (finding 14 out of 18 tender points), and it is important to consider the objective medical findings in the context of that diagnosis.

In *Revels v. Berryhill*, 874 F.3d 648 (9th Cir. 2017), the Ninth Circuit discussed the "unique characteristics of fibromyalgia" in disability determinations. *Id.* at 652.

> Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Typical symptoms include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue. What is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal. Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling. Indeed, there is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain. *The condition is diagnosed entirely on the basis of the patients' reports of pain and other symptoms. There are no laboratory tests to confirm the diagnosis.*

*Id.* at 656 (emphasis added, internal quotation marks and citations omitted).

In addition to the lack of any objective, laboratory testing that might confirm the diagnosis, the symptoms of fibromyalgia are known to "wax and wane," with the result that patients have good days and bad days. *Id.* at 657. The ALJ must, necessarily, "consider a longitudinal record whenever possible," when determining the RFC of a patient with fibromyalgia. *Id.* "In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods[.]" *Id.* at 662.

Under these circumstances, courts within the District of Oregon have been especially reluctant to rely on a lack of objective medical evidence when considering fibromyalgia cases. *See, e.g., Nunn v. Berryhill*, Case No. 6:17-cv-00203-SB, 2018 WL 2244705, at *10 (D. Or. May 16, 2018) (rejecting a lack of objective medical evidence as a valid factor in considering a fibromyalgia claimant's testimony); *Bair v. Comm'r*, 3:17-CV-00622, 2018 WL 2120274, at *5 (D. Or. May 8, 2018) (holding same). In light of *Revels*, this Court follows that example. Fibromyalgia is notable for the lack of objective medical tests and is often accompanied by apparently normal strength and musculoskeletal examinations. The lack of objective medical evidence cannot, therefore, serve as a clear and convincing reason for rejecting Plaintiff's testimony.

### B. Failure to Report Symptoms

The Ninth Circuit has held that an ALJ may consider a claimant's failure to report medical conditions or symptoms in weighing the claimant's credibility. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

In this case, Plaintiff testified that that she will go for days without bathing and that she often smells of sweat or urine, Tr. 82, but the ALJ noted that Plaintiff's testimony was not supported by reports of her treatment providers and examiners, which are devoid of any reference to hygiene issues. Tr. 30; 460 (Plaintiff presented as "alert, calm, afebrile," with no mention of hygiene issues); 464 (Dr. Durham discusses Plaintiff's difficulties climbing stairs, but does not mention difficulty bathing or malodorous presentation); 489 (Plaintiff described as "pleasant" and "in no acute distress with normal mood and affect."); 519 (normal psychiatric findings, with no mention of hygiene issues). As previously discussed, however, fibromyalgia is a condition that waxes and wanes and patients may have good days and bad days. *Revels*, 874

F.3d at 657. On review of the record, and considering the unique characteristics of fibromyalgia, the Court cannot conclude that the absence of record support for Plaintiff's claimed hygiene issues constitutes substantial evidence for discounting Plaintiff's subjective symptom testimony. The Court therefore concludes that the ALJ erred in making his credibility findings.

### III. Medical Opinion Evidence

Plaintiff asserts that the ALJ erred by rejecting the medical opinion evidence of Joshua Durham, D.O. Dr. Durham was Plaintiff's treating physician and diagnosed Plaintiff with fibromyalgia, degenerative joint disease, lumbar radiculopathy, depression, anxiety, and headaches. Tr. 474. Dr. Durham opined that Plaintiff would need to lie down during a regular workday; that she was unable to walk more than a single city block without rest or significant pain; that she would be limited to sitting for two hours and standing for one hour during an eight hour workday; and that she would require twenty to thirty minute breaks on an hourly basis. *Id.* Dr. Durham believed that Plaintiff could frequently lift less than ten pounds and occasionally lift ten pounds, but that she would not be able to lift any greater weight. *Id.* Dr. Durham diagnosed a 20% limitation to Plaintiff's ability to grasp, turn, or twist objects, perform fine manipulation, or reach with either arm. *Id.* Dr. Durham believed that Plaintiff would be absent from work more than four times per month as a result of her impairments. Tr. 475.

Dr. Durham also submitted a mental capacity assessment for Plaintiff. Tr. 477. In that assessment, Dr. Durham noted Plaintiff's medications caused mild mental slowing. Tr. 477-78. Dr. Durham reported marked limitations with respect to pace; moderate limitations to Plaintiff's ability to maintain attention, concentration, ability to sustain a routine, and maintain attendance; and slight limitations to Plaintiff's ability to carry out detailed instructions. *Id.* Dr. Durham indicated that Plaintiff would have slight difficulties responding to changes in the work setting

and moderate difficulty traveling to unfamiliar places or using public transportation. Tr. 479. Dr. Durham again opined that Plaintiff's psychological symptoms would interfere with her ability to complete a normal workday or work week and that she would have four or more absences in an average month. Tr. 478.

Dr. Durham's treatment notes also acknowledge that his diagnoses rely heavily on Plaintiff's subjective symptom reports. In his 2014 treatment records, Dr. Durham "note[s] that it is difficult to determine some of the answers to the disability questionnaire. I discussed with [Plaintiff] the subjectivness of her pain and the boundaries for which I am able to adequately assess a subjective complaint." Tr. 466. Dr. Durham continued "However, I do think she has legitimate pain and qualified for dx of fibromyalgia and would have some difficulty getting gainful employment." *Id.*

The ALJ is responsible for resolving conflicts in the medical record. *Carmickle*, 533 F.3d at 1164. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.* Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or

internal inconsistency. *Tommasetti*, 533 F.3d at 1041; *Andrews*, 53 F.3d at 1042-43; *Morgan v. Comm'r*, 169 F.3d 595, 601-03 (9th Cir. 1999).

In this case, Dr. Durham's opinion was contradicted by the opinions of other physicians, including the state agency consultants. Tr. 30, 32. The ALJ gave little weight to Dr. Durham's opinion, finding that it was not consistent with the overall record and that Dr. Durham had failed to provide indications of clinical signs and findings "that might explain his extreme conclusions." Tr. 31. The ALJ also noted that Dr. Durham's conclusions were not supported by his own treatment notes. Tr. 32. Dr. Durham's "reports contain diagnoses, but essentially no objective signs and findings of any type to support them, much less findings consistent with severe incapacity." *Id.*

In this case, Dr. Durham diagnosed Plaintiff with fibromyalgia based on finding 14 out of 18 tender points, Tr. 466, and the ALJ accepted fibromyalgia as one of Plaintiff's severe impairments. Tr. 23. As noted in the previous section, a diagnosis of fibromyalgia is frequently unsupported by objective medical testing or clinical findings and relies heavily, or even entirely, on the patient's subjective reports of pain and other symptoms. *Revels*, 874 F.3d at 656. The lack of objective signs and findings in Dr. Durham's treatment notes cannot, therefore, constitute a specific and legitimate reason for discounting his opinion with respect to Plaintiff's fibromyalgia-based limitations. The ALJ and the Commissioner also point to Dr. Durham's generally normal exam findings but, as the Ninth Circuit observed in *Revels*, a fibromyalgia patient will often display normal muscle strength and unremarkable neurological and musculoskeletal results upon examination. *Revels*, 847 F.3d at 656. It is notable that Dr. Durham's notes do consistently indicate chronic pain and difficulty squatting or getting up. Tr. 466, 507, 511, 515, 519, 523, 527.

Nor does Dr. Durham's reliance on Plaintiff's subjective symptom testimony in assessing Plaintiff's fibromyalgia-related limitations constitute a specific and legitimate reason for assigning little weight to his opinion as the treating physician. As the Ninth Circuit noted in *Revels*, a fibromyalgia diagnosis may rely *entirely* on the patient's report of pain and other symptoms. *Revels*, 874 F.3d at 656. And, as discussed in the previous section, the ALJ failed to give clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. The Court therefore concludes that the ALJ erred in discounting the opinion of Dr. Durham with respect to Plaintiff's physical limitations.

## IV. Credit-as-True

As the Court has determined that the ALJ committed reversible error, it must determine whether remand should be for further proceedings or for award of benefits.

"Generally, when a court of appeals reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Bernecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)(internal quotation marks and citations omitted). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)(citations omitted). Specifically, the following "credit-as-true" criteria must be met before a court may remand for an award of benefits: (1) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion," (2) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," and (3) "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Id.* Even when these "credit-as-

true" criteria are satisfied, courts retain the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

In this case, Plaintiff satisfies all of the "credit-as-true" criteria. As noted above, the ALJ erred in rejecting both Plaintiff's testimony and the medical opinion of treating physician Dr. Durham. During the hearing in this case, the VE testified that Plaintiff would not be able to sustain employment with the physical limitations assessed by Dr. Durham. Tr. 100-03.

The Commissioner argues that, if this case is remanded, it should be for further proceedings to reconcile the differences between the opinions of Dr. Durham and the consulting physicians. The Court is not convinced. Plaintiff's fibromyalgia diagnosis has been confirmed by tender-point examinations and accepted by the ALJ. As the Ninth Circuit noted in *Revels*, a diagnosis of fibromyalgia may be based entirely on a patient's subjective symptom reports and there are no laboratory tests or objective examinations that will confirm or disprove the diagnosis. The Court sees no purpose to further proceedings. Nor does consideration of the record as a whole leave the Court with any serious doubt that Plaintiff is disabled. Accordingly, this case shall be REVERSED and REMANDED for an award of benefits.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for calculation and award of benefits. Final judgment shall be entered accordingly.

DATED this <u>13th</u> day of September, 2018.

                                             s/Michael J. McShane
                                             MICHAEL McSHANE
                                             United States District Judge